UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| **FRANCES TURNER,** | |
| **Plaintiff,** | |
| v. | **CIVIL ACTION NO.:** _____ |
| **RICH PRODUCTS CORPORATION,** | |
| **Defendant.** | **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW PLAINTIFF FRANCES TURNER and files this Complaint against the Defendant RICH PRODUCTS CORPORATION, showing the Court as follows:

## INTRODUCTION

1.

This is a civil rights action for damages and injunctive relief arising out of numerous decisions by Rich Products Corporation (Rich Products) to act and fail to act, including allowing a hostile work environment because of race and gender to fester and materialize, and to terminate Ms. Frances Turner's employment on the basis of her race and gender and because of her complaints about such unlawful conduct, all in violation of the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* and in further violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981. Ms. Turner seeks redress for wonton, reckless and intentional unlawful conduct and retaliation perpetrated upon her by her supervisors and other superiors while she was employed by Rich Products at its Brunswick, Georgia facility.

## JURISDICTION AND VENUE

2.

Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights) because the matters in controversy arise under the laws of the United States, to wit, Title VII of the Civil Rights Act of 1964, as amended and the Civil Rights Act of 1866.

3.

Venue is proper in this Court under 28 U.S.C. § 1391 because it is a district where Defendant resides or does business and where a substantial part of the events giving rise to Ms. Turner's claims occurred.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.

All conditions precedent to jurisdiction under the Civil Rights Act of 1964, as amended, have occurred, including Ms. Turner's filing of a timely Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC), a copy of which is attached hereto as Exhibit A, and including issuance by the EEOC of a Notice of Right to Sue, a copy of which is attached hereto as Exhibit B.  Ms. Turner has timely filed this action within ninety (90) days of receipt of the EEOC Notice of Right to Sue dated July 11, 2022.

## PARTIES

5.

Plaintiff Frances Turner is a Black, female citizen of the United States and a resident of the State of Georgia and Glynn County.  She was employed by Defendant, Rich Products Corporation, in Brunswick, Georgia when her employment was unlawfully terminated.

6.

Rich Products Corporation is a corporation organized and existing under the laws of the State of New York. The company can be served with this Complaint by serving its registered agent for service of process, Corporate Creations Network, Inc., 2985 Gordy Parkway, 1st floor, Marietta, Georgia 30066.

**STATEMENT OF FACTS**

7.

Plaintiff Frances Turner was first employed by Rich Products as a "General Laborer/Production Worker" at its Brunswick, Georgia facility on approximately June 20, 2019. After demonstrating consistent successful performance, she was promoted to the position of "Operator-Process Control Float" less than eighteen months later. In this position, she was periodically assigned supervisory responsibilities.

8.

Approximately seven months after being hired, in January 2020, Rich Products designated as Ms. Turner's new supervisor or Shift Leader, George Jones, an Hispanic man who would later repeatedly state to her:

> You don't have any power because you are a female and women don't have any power and because you are Black, no one will believe you. And in my household, the woman bows down to me.

Mr. Jones' perspective on gender and racial relationships, unrestrained by the company, would govern the duration of Ms. Turner's employment with Rich Products Corporation.

9.

Rich Products' Brunswick facility was rife with open, uncontrolled racial aggression from White employees. Every day, White employees would speak loudly with the clear intention that

the Black employees would hear them, stating: that Black employees must work "underneath" them, that Black employees were incompetent; frequent racial slurs, including the "N" word; and frequently telling racial jokes. During the campaign of the former President of the United States in late 2020, the aggressive loud talk accelerated without supervisory restraint by Rich Products. Nevertheless, at times before September 2020, Ms. Turner kept her head down, performed her responsibilities and did not complain.

10.

Rich Products allowed Shift Leader George Jones the authority of accounting for the vacation days earned by the employees under his supervision, and soon after his designation as Ms. Turner's Shift Leader, Mr. Jones began misappropriating (also known as stealing) Ms. Turner's vacation days.

11.

Certain production lines of the plant would shut down from time to time because of product demand or for other reasons. Necessarily during shut-downs, employees were absent from work. Vacation days were not properly allocated to such shut-down days, but Mr. Jones allocated Ms. Turner's vacation days to production shut-down days. Numerous other Black workers were similarly targeted by Mr. Jones.

12.

Mr. Jones misappropriated the vacation days of Black workers over whom he had supervisory control a) exclusively, or b) more than White workers over whom he had supervisory control. After unsuccessfully seeking correction from Mr. Jones, Ms. Turner complained to on-site, and then to corporate, Human Resources (HR), and then to Plant Mangers Tim Coffia and Mike Callaway in June 2020 about the misappropriation of vacation days from Black employees.

Mr. Jones was required to give the vacation days back and, despite his superiors' intervention, he immediately after emerging from a meeting with the Plant Managers, Mr. Jones delivered a threat to Ms. Turner with undefined consequences for going over his head, a threat on which he delivered numerous times over the course of Ms. Turner's employment as he worked to exact revenge for going over his head.

13.

Mr. Jones further denied Ms. Turner COVID pay for her absence required by the pandemic, and he further denied her funeral leave for a death in the family, and he further intervened to prevent payment for days approved for leave under the Family Medical Leave Act.  All such leave was available to White employees and male employees, and to employees who did not complain of race- or gender-based discrimination, but not to Ms. Turner.

14.

Rich Products further taxed Ms. Turner's wages as an employee but a substantially insufficient amount of federal and state taxes, social security and medicare taxes were withheld. At the end of each year, Ms. Turner's tax liability was significant, whereupon she inquired of Rich Products HR professionals.  They could not give a clear explanation of why this was occurring. Ms. Turner asked her White co-worker peers who told her that they did not have to pay back taxes on their wages as Ms Tuner had to do.

15.

After George Jones' designation as Ms. Turner's Shift Leader, another supervisor under Mr. Jones' supervision, Group Leader Keith Weston, began harassing Ms. Turner on the basis of her gender.  Specifically, in approximately September 2020, Mr. Weston made sexual advances to Ms. Turner – advances she rejected.  Immediately after her rejection of his advances, Mr. Weston

began loading her up with work, arbitrarily denying leave and engaging in other harassing conduct described below.  Ms. Turner complained first to Shift Leader George Jones and, after no effective response was forthcoming from Mr. Jones, on September 15, 2020, she complained to HR regarding Mr. Weston's conduct, describing the conduct as "discrimination," "stalking" and "harassment."  Ms. Turner complained to HR repeatedly and to higher level managers but Mr. Weston's conduct did not change and, indeed, it consistently occurred day-in-and-day-out throughout the time of her employment.

16.

On October 20, 2020, Ms. Turner was pulled into Mr. Jones' office.  Mr. Jones used the no-fault attendance policy to falsely claim that Ms. Turner had 8 points whereupon her employment could be terminated. The next day, she complained to HR that Mr. Jones was falsifying her attendance points; that Mr. Jones' understudy, Mr. Weston, was constantly following her around and getting in her personal space; that Mr. Weston was making her work longer hours than necessary; and that Mr. Jones was repeatedly threating to fire her based on his false calculation of work absences and related points.

17.

Only two days later, on October 23, 2020, she complained again to HR about harassment, informing HR that Mr. Weston was again making her stay late at work to control her, following her around the plant, getting in her personal space, and spying on her boyfriend.  She pleaded with the HR representative to let the plant managers know of her complaint, and stated that she was "mentally and physically drained" from "holding it in because no one was willing to listen".

18.

Through complaints to Mr. Jones and to HR, Ms. Turner made clear that racial discrimination was present in the workplace and directed at her. She did not complain earlier, as noted above, but in September 2020, after a COVID-related slow down and when workers returned to work on a regular basis, certain White co-workers became aware of her promotion and raise awarded in January 2020. Every single day, two or three White individuals were calling her a "black bitch" or a "lazy black bitch", pointing at her and speaking loudly with the intention of being heard by her and others. These individuals interfered with her work-related conversations with co-workers, blocked her path, and forcefully bumped into her when walking past her. The conduct was ongoing with similar or identical such conduct occurring every workday. On one occasion, one of these individuals intentionally sprayed her and another Black co-worker with boiling water. Temporary Black employees who complained about the conduct of these White individuals were discharged immediately. Ms. Turner complained numerous times at every level – to Mr. Jones, to HR and to the Plant Managers, Time Coffia and Mike Caldwell – that she was being profiled as a Black woman, that racial comments to her and others were occurring every day, that the workplace was hostile and unsafe. Promises to "look into it" went unfulfilled and the conduct continued through the termination of Ms. Turner's employment.

19.

On December 4, 2020, Ms. Turner again complained in a meeting with Shift Leader George Jones and Keith Weston that Mr. Weston was micromanaging her, isolating other workers from her and "getting in my personal space like I told you before." Despite having been through at least four discussions with HR representatives and his superiors in which Ms. Turner's allegations of sexual harassment by Mr. Weston were discussed, Mr. Jones called her a liar. In the same meeting,

Mr. Jones then looked at the video recordings which confirmed the conduct. Ms. Turner told Mr. Jones that she was going to talk to the Plant Managers about this, whereupon Mr. Jones twice physically attempted to snatch Ms. Turner's employment badge from her clothing and told her she was fired. She explained that her boyfriend had her car keys and Mr. Jones directed her to the canteen to retrieve them, whereupon he then physically intervened in the transfer of the keys to her, forcefully colliding with Ms. Turner and her boyfriend as the keys were handed to her. Ms. Turner complained about this incident the same day to HR, referencing it as discrimination "because I'm a woman". After a meeting with Plant Manager Tim Coffia on December 9, 2020 during which the videos were again viewed and the conduct confirmed – just as the same or similar conduct was discussed with Mr. Coffia on October 7, 2022 and confirmed – she was suspended by Mr. Coffia without pay for three days and demoted.

20.

After an incident in which a White female exotic dancer managed by Mr. Jones physically pushed Ms. Turner, spit in her face and called her racial slurs ("I'm going to get your Black ass fired"), Ms. Turner complained in writing as she was instructed to do by a Rich Products manager.

21.

Approximately a week later, no action was taken against the exotic dancer but Mr. Jones informed Ms. Turner that he made the decision with Plant Managers Tim Coffia and Mike Callway to demote her to a general labor position. After approved vacation leave, Ms. Turner was called on January 25, 2020 by another Rich Products manager who told her that he was instructed to call and inform her that her vacation days would be counted as points against her, as would this day, January 25, 2020, if she did not come into work as scheduled that afternoon. Nevertheless, during the call, this manager instructed Ms. Turner not to come to work and await a call from Plant

Manager Tim Coffia. Mr. Coffia called Ms. Turner and confirmed that she was being transferred to a lower position in the plant. When Ms. Turner asked why she was being punished for being discriminated against because she was Black and for being sexually harassed by Mr. Weston, Mr. Coffia told her she was fired….and then Mr. Coffia said she was not fired and instructed her not to call Rich Products, Rich Products would call her. He then hung up on her. From that time of Mr. Coffia's instruction, she remained a suspended, unpaid employee until termination of her employment on or about March 3, 2020.

22.

Ms. Turner was not scheduled to work on October 3, 2020. Ms. Turner was not scheduled to work on December 29, 2020. Ms. Turner was not scheduled to work on January 23 and 24, 2021. Ms. Turner was told not to come to work on January 25, 2021. For each of these days, Rich Products gave her a "point" under its no-fault attendance policy – but the no-fault attendance policy did not allow "points" to be given for days on which an employee was absent from work because she was directed by the schedule or otherwise not to come to work. Mr. Turner worked her full shift on October 10, 12, 13 and 14, 2020. For each of these days, Rich Products gave Ms. Turner one-half a "point" under its no-fault attendance policy for leaving early – but the no-fault attendance policy did not allow one-half "point" to be given for days on which an employee worked their full shift.

23.

Ms. Turner's employment was terminated on or about March 3, 2021 for having in excess of 8 "points". Ms. Turner, however, had much fewer than, and nothing close to 8 points.

## COUNT ONE

### DISPARATE TREATMENT BECAUSE OF RACE UNDER THE CIVIL RIGHTS ACT OF 1964 AND THE CIVIL RIGHTS ACT OF 1866

24.

Rich Products Corporation, through its agents, knowingly, willfully, and intentionally discriminated against Ms. Turner as described above and as further to be proved at trial committed numerous adverse actions against her, including without limitation: misappropriated her vacation time; denied payment of wages, suspended her without pay; allowed a hostile work environment to fester and materialize; falsely manufactured attendance points to deny advancement and terminate her employment; all on the basis of her race, in violation of Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866.

25.

The adverse actions set forth in the hereinabove were not taken against similarly situated White employees under similar circumstances.

26.

Ms. Turner's race was a motivating factor underlying Rich Products' actions to take the adverse actions referenced in the immediately preceding paragraph.

27.

The reasons given by Rich Products for denial of Ms. Turner's rights and termination of her employment are false and a pretext for the discriminatory motivations underlying Rich Products' actions.

28.

The unlawful conduct of Rich Products was committed intentionally and, as a direct, legal and proximate result thereof, Ms. Turner suffered significant financial loss, emotional distress and physical injuries to be proved at trial.

29.

Rich Product's discriminatory conduct was carried out by and with the knowledge of multiple layers of management and was reckless, willful, deliberate, and in conscious disregard of Ms. Turner's federally protected rights, such that an award of punitive damages is appropriate.

30.

Accordingly, Ms. Turner seeks compensatory, punitive and other damages and expenses allowed by law against Rich Products in an amount to be proved at trial.

31.

Ms. Turner further seeks all available declaratory and equitable relief against Rich Products and for Ms. Turner, as appropriate.

## COUNT TWO

### DISPARATE TREATMENT BECAUSE OF GENDER UNDER THE CIVIL RIGHTS ACT OF 1964

32.

Rich Products Corporation, through its agents, knowingly, willfully, and intentionally discriminated against Ms. Turner as described above and as further to be proved at trial, committed numerous adverse actions against her, including without limitation: misappropriated her vacation time; denied payment of wages, suspended her without pay; allowed a hostile work environment to fester and materialize; falsely manufactured attendance points to deny advancement and terminate her employment; all on the basis of her gender, in violation of Title VII of the Civil Rights Act of 1964.

33.

The adverse actions set forth hereinabove were not taken against similarly situated male employees under similar circumstances.

34.

Ms. Turner's gender was a motivating factor underlying Rich Products' actions to take the adverse actions referenced in the immediately preceding paragraph.

35.

The reasons given by Rich Products for denial of Ms. Turner's rights and termination of her employment are false and a pretext for the discriminatory motivations underlying Rich Products' actions.

36.

The unlawful conduct of Rich Products was committed intentionally and, as a direct, legal and proximate result thereof, Ms. Turner suffered significant financial loss, emotional distress and physical injuries to be proved at trial.

37.

Rich Product's discriminatory conduct was carried out by and with the knowledge of multiple layers of management and was reckless, willful, deliberate, and in conscious disregard of Ms. Turner's federally protected rights, such that an award of punitive damages is appropriate.

38.

Accordingly, Ms. Turner seeks compensatory, punitive and other damages and expenses allowed by law against Rich Products in an amount to be proved at trial.

39.

Ms. Turner further seeks all available declaratory and equitable relief against Rich Products and for Ms. Turner, as appropriate.

### COUNT THREE

### RETALIATION BECAUSE OF PROTECTED ACTIVITY UNDER THE CIVIL RIGHTS ACT OF 1964 AND THE CIVIL RIGHTS ACT OF 1866

40.

Ms. Turner made specific complaints of discrimination because of her race and gender.

41.

Ms. Turner complained numerous times of discrimination on the basis of her race and gender to Rich Products supervisors and human resource professionals who had the power and authority to address, correct, prevent and sanction the identified conduct.

42.

Ms. Turner's complaints to Rich Products superiors were made in an appropriate and professional manner and in a time and manner consistent with the human resource policies of her employer.

43.

Rich Products failed to effectively respond – or failed to respond at all – to Ms. Turner's complaints and the unlawful conduct continued unabated from day-to-day until her employment was unlawfully terminated.

44.

Rich Products intentionally retaliated against Ms. Turner, without limitation, by harassing her with intentional failure to take action to provide a safe workplace, false allegations of policy violations, failing to pay wages, suspending her without pay, denying advancement, misappropriating her vacation time, falsely manipulating her attendance points and terminating her employment because she opposed Rich Product's unlawful conduct under Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866.

45.

Rich Products' retaliatory conduct violated Title VII of the Civil Rights Act of 1964 to the

extent that retaliation occurred because Ms. Turner opposed unlawful discrimination on the basis of gender.  To the extent Rich Product's retaliation occurred because Ms. Turner opposed unlawful discrimination on the basis of race, such conduct violated both the Civil Rights Act of 1964 and the Civil Rights Act of 1866.

46.

The unlawful retaliatory conduct of Rich Products was committed intentionally and, as a direct, legal and proximate result thereof, Ms. Turner suffered significant financial loss, emotional distress and physical injuries to be proved at trial.

47.

Rich Product's conduct was carried out by and with the knowledge of multiple layers of management and was reckless, willful, deliberate, and in conscious disregard of Ms. Turner's federally protected rights, such that an award of punitive damages is appropriate.

48.

Accordingly, Ms. Turner seeks compensatory, punitive and other damages and expenses allowed by law against Rich Products in an amount to be proved at trial.

49.

Ms. Turner further seeks all available declaratory and equitable relief against Rich Products and for Ms. Turner, as appropriate.

## COUNT FOUR

**HOSTILE WORK ENVIRONMENT BECAUSE OF RACE AND GENDER UNDER THE CIVIL RIGHTS ACT OF 1964 AND THE CIVIL RIGHTS ACT OF 1866**

50.

Ms.  Turner 's superiors, subjected her to harassment because of her gender and race, and that harassment was, objectively and subjectively, severe and pervasive such that it altered the

conditions of her employment and created a hostile and abusive work environment in violation of both the Civil Rights Act of 1964 and the Civil Rights Act of 1866.

51.

The harassment attributable to the actions and inactions of Rich Product's supervisors and managers was unrelenting, occurring almost every day of Ms. Turner's presence on the work site.

52.

As set forth in detail above, Ms. Turner complained through the Rich Product's chain of command and in accordance with Rich Products' policies to prevent and correct the ongoing harassment and to seek prompt remedial action, but no such remedial action was forthcoming.

53.

These discriminatory actions and inactions of Rich Products were committed intentionally and, as a direct, legal and proximate result of Rich Products' actions and inactions, as described herein, Ms. Turner suffered significant financial loss, emotional distress and physical injuries to be proved at trial.

54.

Rich Product's conduct was carried out by and with the knowledge of multiple layers of management and was reckless, willful, deliberate, and in conscious disregard of Ms. Turner's federally protected rights, such that an award of punitive damages is appropriate.

55.

Accordingly, Ms. Turner seeks compensatory, punitive and other damages and expenses allowed by law against Rich Products in an amount to be proved at trial.

56.

Ms. Turner further seeks all available declaratory and equitable relief against Rich Products and for Ms. Turner, as appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

(a) Take jurisdiction of this matter and declare that Ms. Turner's rights under Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866, were violated by Rich Products Corporation;

(b) Permanently enjoin Rich Products Corporation from further discriminating against Ms. Turner because of her race and gender;

(c) Award Ms. Turner compensatory damages, including without limitation, all lost wages, benefits, and other losses incurred as a result of Rich Products Corporation unlawful discrimination;

(d) Order Rich Products Corporation to rehire Ms. Turner into her previous position of employment, or to award her front pay, as just, equitable and appropriate;

(e) Award Ms. Turner pre-judgment and post-judgment interest;

(f) Award Ms. Turner her costs and expenses of this action, including reasonable attorney fees as authorized by law;

(g) Grant a trial by jury; and

(h) Award such other and further legal and equitable relief as will effectuate the purposes of the referenced statutes or as the Court deems just and proper.

RESPECTFULLY SUBMITTED, this 10th day of October, 2022.

[signature on next page]

                                              <u>S. Wesley Woolf</u>
                                              S. WESLEY WOOLF
                                              Georgia Bar No. 776175
                                              *Attorney for Plaintiff*

WOOLF LAW FIRM
408 East Bay Street
Savannah, Georgia 31401
T:  (912) 201-3696
F:  (912) 236-1884
woolf@woolflawfirm.net

JS 44 (Rev. 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
FRANCES TURNER

**(b)** County of Residence of First Listed Plaintiff: Glynn County, Georgia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
S. Wesley Woolf, WOOLF LAW FIRM, 408 East Bay Street, Savannah, GA 31401; (912) 201-3696

## DEFENDANTS
RICH PRODUCTS CORPORATION

County of Residence of First Listed Defendant: Glynn County, Georgia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | **SOCIAL SECURITY** | [ ] 480 Consumer Credit |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 861 HIA (1395ff) | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 850 Securities/Commodities/ Exchange |
| | | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| | | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [X] 442 Employment / [ ] 510 Motions to Vacate Sentence | | | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education / [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 2000e, et seq, 42 U.S.C. Section 1981

Brief description of cause:
Title VII of the Civil Rights Act of 1964, Civil Rights Act of 1866

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE: 
DOCKET NUMBER:

DATE: 10/10/2022
SIGNATURE OF ATTORNEY OF RECORD: /s/ S. Wesley Woolf

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.
  **(b)** **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)
  **(c)** **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.** Nature of Suit.  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.